Now here, 21-3183, United States v. Salti, Saltai, Mr. Frederickson, are you ready? Yes, Your Honor. Good afternoon, and may it please the Court, my name is Matthew Fredrickson. I'm with the Federal Public Defender's Office and represent Mr. Salti. Pursuant or consistent with the party's binding plea agreement, the Court ordered Mr. Salti to pay $35,000 in joint and several with his co-defendant, Mr. Towner. For years, the clerk effectuated that order by applying a portion of the payments from Mr. Towner, who owed restitution in joint and several greater than Mr. Salti, to Mr. Salti's obligation proportionate to their shared obligation. You say they did this for years. It was a bookkeeping thing. It had no practical consequences. Do you agree? No, Your Honor. I believe that it is the only way to effectuate or put meaning to the joint and several language of the orders as they were made by the two courts. And in that way... Well, you're saying it was right to apportion it, but no one had any reason to dispute the bookkeeping, the way the bookkeeping was done. Oh, I apologize. Yes, Your Honor, of course. That's what I meant by saying no effect. Yes, yes. No one had any reason to dispute what the clerk was essentially doing, putting into effect these orders, until this final payment from Mr. Salti essentially put him over the amount that he owed because of the proportionate application of Mr. Towner's payments to their shared obligation. Well, Mr. Salti would not have paid $35,000 then, correct? Yes, yes, because of that joint and several angle, yes. Because of the fact that the clerk had put $2,700 from the other guy into his account. That is correct, Your Honor, yes. So that if he gets that back, if Mr. Salti gets back the $2,750, whatever it was, he would only have paid less than he was told to pay by the court. He would be, well, his liability, what he is required to pay, that $35,000 joint and several, would be paid in full because of that combined application of joint and several liability. Well, but he would not have paid his $35,000. He was ordered to pay $35,000 joint or several, and the other guy $70,000 joint or several. Correct. So this, Mr. Salti would come out with $26,000, $27,000. Right, the $2,487, that is the specific amount. Correct, he did not pay the full $35,000, but he did get the benefit of that plea agreement that had that joint and several piece into it. So he does, he did bargain for that in the plea agreement to be joint and several with his co-defendant, whose payments then would be applied proportionately to his as well. I am not following why that would make any difference at all. The plea agreement agreed to joint and several liability, and under that joint and several liability, at least as it applies in the restitution context, he is obligated for the full $35,000. He could be obligated unless, correct, unless his co-defendant made payments as well, which is what we have here. Unless, but if that co-defendant makes payments, but they still have not reached the full maximum amount of the victim's loss. Which is the point in this hybrid type arrangement. Correct, but Mr. Salti didn't agree to that hybrid approach. He agreed to traditional joint and several liability in the 11C1C plea agreement. That is not, I mean, I can't think of any reason why it would be done this way. So one defendant owes $72,000 joint and several, one owes $36,000. What you're saying is if the one who owes $72,000 can pay $36,000 and says, I want that all applied to where I'm jointly and severally liable with the other defendant. So he doesn't have to pay anything. The guy who owes $72,000 doesn't have any more money. So the victim gets shafted by $36,000. I can't imagine any reasonable basis for deciding to do it that way. Your Honor, the court had the tools at its disposal to do a number of different things. But without prioritizing the payments and without making Mr. Salti severally liable, the clerk has to effectuate what the court ordered. The clerk followed this rule from the administrative office of the courts, which I find amazing. I can't imagine why they did that. So give me a reason why you'd want to have the restitution paid in this way. It makes no sense to me. It seems very unfair to the victim and not at all unfair to the defendants to do it the way the court ended up doing it. So give me a reason, not some technical thing, not because it's in the manual of the administrative office of the courts, which I suspect the judge wasn't even aware of when he entered the order, but go ahead. Sure, sure. So the reason this needs to be put into effect is to give meaning to that joint and several language that Mr. Salti agreed to. How does it give meaning? Giving meaning to the joint and several liability means that the total amount paid will not exceed $72,000. So if the guy who owed $72,000 paid $72,000, then the other fellow is relieved of his duty. Maybe there's a, in regular court cases, the one who owed the $36,000 might be subject to some sort of contribution from the other. I think the Supreme Court has said contribution doesn't apply in the restitution context. I think they said that once. But that's what effectuates joint and several liability is you can get it from either one. Well, and then the additional piece there is the apportionment, right? Mr. Salti's role in this is less liable, so they apportioned that $35,000 in joint and several. So those working together, given the traditional approach to joint and several. Yes, go ahead. Because the judge found him less culpable, his liability was limited to $36,000. That's how that was taken into account. It didn't say that if the other guy pays anything, we're going to reduce your liability by something, even though the victim is not fully compensated. But it didn't need to, because what Mr. Salti was agreeing to was the joint and several accounting that had been traditionally the case. It would have been the additional flourish. Mr. Salti was aware of the AOC. I'm speaking of the Ministry of Office of the Court. Of course. It's kind of funny. When you hear AOC now, that's not what you think. I know. When the Ministry of Office of the Courts... Yes. Start over again. Go ahead. Was there any reason to think Mr. Salti knew what the manual from the Ministry of Office of the Courts said? Well, what we have is the traditional approach to joint and several where for many, many years, we have as early as United States v. Harris, United States v. Spring, this idea that with joint and several, there's the possibility of not having to pay the full obligation if another co-defendant contributes. And so... Contributes. Go ahead. Do you have any case from traditional tort law where this result would occur? I look for it. I didn't find anything like that. Well, we do have the other cases in this hybrid restitution that are grappling with this, seeing the same thing in clerk's office. They are applying this consistent effect of the AOC approach. The clerk's offices are... The courts are generally following what this court did, eventually. Isn't that right? True, true. Because what the clerk's office is doing doesn't make any sense to the judges, I suspect. But the clerk has had... I mean, the clerk... The administrative office came into effect in 1939 and has been tailoring their policies to effectuate judges' orders since then. And they're doing... And so when we see... But they can't... The AO's guidelines and practices can't override the law. That is correct. But I would posit that the law is joint and several has this piece where you can anticipate benefiting from your co-defendant's contributions. Let me return to my original question, please. Can you think of any reason why this is fair and just to the victims or unfair to the defendants to do it the way the judge did? Can you give a reason that would commend itself to common law judges? Because you're saying this is based on the common law notion of joint and several liability. I'll do my best. Number one, Mr. Salte agreed to... With the joint and several as we understood it at the time. And that would include this contribution. Number two, I would offer that there's also this piece where it has to be individualized sentencing that is specific to the specific defendant's liability contribution to the harm done. And so even though there is this overriding or guiding principle that the victim needs to be paid in full as quickly as possible, we also have the import of individualized sentencing and 11C1C which essentially binds the court once it accepts this agreement. And there would be no reason to assume that anyone would know about this additional hybrid restitution flourish of having to wait until the victim got paid in full once the apportioned liability is apportioned. Is there any reason to think that the defendant who signs this has any idea one way or the other how this will be handled? Well, if there's that ambiguity and we're trying to decide who believed what, we've got a, the tie essentially goes to the defendant. Ambiguity should be right against the drafters of the 11C1C plea agreement and that would be the government, not Mr. Salty where essentially the chips would fall in his favor given any ambiguity. We usually don't, when there's a possible ambiguity, we usually don't adopt the version that's absurd and makes no sense to us. Maybe I can present it in this way that what you have here is the court has the tools at its disposal to effectuate the judgment it now wants in place. And we have these in Exhibits 6 and 7 that the clerk offered which are that he could have made the restitution separate if he wanted to ensure that that $35,000 was paid first and foremost by Salty up until the victim was paid in full. It had that option and it didn't choose to do that. That would have relieved the other defendant. If it was just this defendant, if it was just Mr. Salty obligation then how do you treat the other defendant's obligation? He should have to pay the full $72,000. Mr. Salty has no money to pay and this has just made a several obligation of his and that's to the benefit of the more culpable person. So that's... I don't see why that's an alternative. And does it make any difference that Mr. Salty was by himself at the time he was tried and sentenced and Judge Marghia took the other fellow and sentenced him and made him... I do. I do believe that. Yes, in an attempt to answer both questions. First, Judge Kelly, I agree with you. What we're seeing in hybrid restitution orders is that one judge knows about all the moving pieces and Judge Crabtree did not know what Judge Marghia was going to do. And we see in every other hybrid case one judge is dealing with all of those different parts. So he would not have known what Judge Marghia would have ordered. The chips fell where they did in this case. But he ordered Salty to pay $35,000. Yes. Or $37,000, whatever it was. $35,000. In joint and several. But you'll see from... With who? With Mr. Towner. Well, suppose Towner never even got sentenced or was acquitted. Would he still only have to pay... Would he pay anything less than $36,000? $37,000? No. He would be on the hook for that full $35,000 and have to pay it. But that's not how the chips fell in this case. There was contribution from Judge Towner which giving effect to both orders meant that that was applied proportionally. And Judge Hart's one last attempt to try to make it sensible. You do have these prioritizings where the court can say, make sure that Towner's payments go to his individual liability first and foremost and Mr. Salty's second. Neither court took advantage of that. Neither court did that and that's actually in the order. So regardless of whether or not they knew what the AO's guidance was, they had that in their order, this option to make it prioritized. And they didn't take advantage of that. So the court isn't doing anything on its own. It's not going rogue. It's doing its best to effectuate the orders as written. And that is this guidance provided by the AO that hey, there's no prioritizing. It's joint and several. We deal with it in this way. And clerks around the country are doing it that way. That's what happened in Sheetz. That's what's happening in Yalincat. And what happened in Gonzales. And the Gonzales case out of the Western District of Texas is interesting because the court says well, this is what you asked for prosecution and this is how the clerk interpreted it. You have to live with that. I see the problem but it's incumbent upon the government and the court to be clearer and they have the tools at their disposal to be clearer and the clerk even illustrated that with the exhibits provided. But aside from all of that I do think that what Mr. Salty entered into was an 11C1C for $35,000 joint and several with Mr. Towner and that's what is binding here. I don't think this court needs to essentially grapple with the emerging idea of hybrid restitution and this additional piece of having to pay up and until this point or until this happened this conditional piece because we have the 11C1C. And with that I would ask that the court vacate the order and remand with instructions to reinstate the original order. Thank you. Thank you. Ms. Sheedy. Yes. May it please the court my name is Catherine Sheedy. I'm an assistant United States attorney appearing this afternoon on behalf of the United States. As part of his plea Mr. Salty negotiated and agreed to pay $35,000 to the victim of his crime. That victim suffered a $72,000 loss as a result of Mr. Salty's actions and the actions of his co-conspirator Patrick Towner. The plain language of Mr. Salty's judgment reflects this agreement. The United States seeks to enforce the original agreement by holding Mr. Salty liable for the full amount of the $35,000 he agreed to pay until he pays that amount in full or until the victim's loss is repaid in full whichever happens first. The dispute before the court arose when Mr. Salty voluntarily paid the full amount of his $35,000 restitution judgment with a payment of nearly $8,000. This brought his total payments in the case to exactly $35,100 the exact amount of his $100 special assessment and his $35,000 restitution order. When the clerk of court received Mr. Salty's final payment the clerk notified the United States that an overpayment had been made and Mr. Salty was due a refund of approximately $2,500. The United States disagreed with this conclusion that an overpayment had been made. And to be clear the United States is not alleging that the clerk of court acted inappropriately or did any wrongdoing. The United States understands that the clerk of court is following guidance issued by the AOC. The United States takes issue with that guidance in those policies. Is that guidance somehow consistent as defense counsel suggests isn't it consistent with what the plea agreement suggested? No, I don't believe so. I didn't really see the plea agreement being raised until the reply brief so I'm interested in your response to that argument. In the plea agreement restitution was not addressed. The amount of restitution was actually addressed at the sentencing hearing. The first sentencing hearing the defendant indicated he didn't understand he was responsible for paying restitution so sentencing was continued and then at the continued sentencing hearing all parties agreed that $35,000 amount was appropriate. So it's not actually included in the plea agreement but Mr. Salte didn't object to that amount he agreed to pay it and he understood that would be his obligation and I think that understanding is shown by the clerk's office to ask for you know a payoff balance he voluntarily paid $35,000 in restitution so he must have understood that was what he owed. Are you familiar with joint civil liability has been around a long time. Yes. Do you have any idea how this was handled in tort cases? Surely something like this has happened where two defendants are jointly and separately liable but in different amounts? Actually I don't think that occurs in civil cases because in civil cases with joint civil liability the common law principle is that both debtors owe the full amount individually but the creditor there's no hybrid right. It could depend on causation. I have not seen a hybrid situation in civil cases that would relate to this. Is there anything in the record that suggests that the judge on Mr. Stolte was aware of what the judge on Mr. Towner was going to do? There's nothing in the record that shows that but there's also nothing in the record that would indicate otherwise. I think the fact that they were tried in two separate cases Well suppose that the judge had decided that Mr. Towner was not going to pay anything. Was that in your or to Mr. Stolte's benefit? I don't think it would affect Mr. Stolte at all. Mr. Stolte agreed to pay $35,000 he was ordered to pay $35,000 and he did pay $35,000. The only way Mr. Stolte could pay less than $35,000   the original judgment. I'd like to take a second and address the appellant's  that the district court modified the terms of the original judgment and I think the court is already aware and has pointed out that the most logical reading of that original judgment is what the United States seeks to enforce today. That Mr. Stolte owed $35,000 in restitution and he should pay that amount until or if the victim is fully compensated by his co-defendant. Or until he reached $35,000. Or until he reached $35,000. Because he was not going to fully compensate the victim because he was only ordered to pay $35,000. That's correct. If, for example, Mr. Stolte had paid $40,000 he would be entitled to a refund so that the actual amount paid was $35,000. Even though the clerk might have apportioned that extra payment over to Mr. Towner? I'm not sure that I understand your question. Assuming he paid $40,000 and he only owed $35,000 wouldn't the extra $5,000 he paid under the joint and several liability argument be then put over on Towner's account? No, I don't believe so because the judgment ordered Mr. Stolte to pay $35,000 so I believe that capped his obligation at $35,000 so he satisfied that obligation with his payment of $35,000. So the joint and several liability doesn't mean anything then? No, joint and several liability comes into play because once the victim is fully compensated he's not he's only gotten $35,000 from Mr. Stolte he hasn't gotten anything from Mr. Towner theoretically. Theoretically, right. So that money would then go over  credit and when he paid an extra $30,000 then the man would be compensated 100%. I'm not sure I'm understanding what you're saying because the maximum that Mr. Stolte could pay is $35,000 that was his obligation so if he overpaid that amount he would be entitled to a refund it wouldn't go against Mr. Towner's liability but the alternate gives us a different result. If Mr. Mr. Towner paid over you know I guess more than $35,000 or Mr. Towner was ordered to pay $72,000 jointly and severally but the victim would not get any more than the $70,000 $72,000 that's correct that was the victim's loss and case law is clear that victims are not entitled to a windfall as a result of a restitution order so they cannot double collect the maximum the victim can get is $72,000 the maximum Mr. Towner could get would be required to pay is $72,000 the maximum Mr. Stolte would be required to pay is $35,000 that would be $100,000 right but since the victim cannot collect more than its loss once the victim receives the $72,000 then the defendants have been deemed  their obligation and even if they haven't reached the total amount they were ordered to pay they are no longer liable because the victim has been fully I'm wondering should the clerk's office have allocated this should they have allocated no portion of the co-defendants payments until he reached the $35,000 threshold and then started allocating is that what it would have been I think what the clerk needs to do is collect the amount of restitution as ordered but pay attention to the amount paid to the victim so that when the victim is fully compensated then the liability is satisfied I think we get into a problem here because of the way the clerk's accounting system you have to remember in this case you're saying it's or the individual's total liability is paid I think it can't just be the victim's total no and I'm sorry that's not what I meant I'm sorry if that was not clear just a little confusing if the clerk set up its accounting system so there were a debt ledger for Mr. Salty that said he owed $35,000 and a separate debt ledger for Mr. Towner that said he owed $72,000 then the clerk could accept payments apply them to the individual's total liability for Mr. Salty but when the victim receives a total of $72,000 then the remaining liability is extinguished the problem with the clerk's accounting system is it sets up two separate debt ledgers and applies Mr. Towner's accounting program and it creates an absurd result and I think the court has already noted that I'd like to bring to the court's attention the Crime Victims Rights Act which mandates the court to ensure a crime victim is afforded his rights in any court proceeding involving an offense against a crime victim similarly the Crime Victims Rights Act requires the United States to make its best efforts to see that crime victims are afforded their rights these rights include full and timely restitution so by allowing a refund to Mr. Unpaid delays the recovery for that victim and also reduces the sources from which that restitution can be collected from so I think Congress's intent was clear that it is a priority to compensate victims of offenses and I hope that concludes my presentation if the court has no further questions I'll  remainder of my time thank you counsel thank you counsel thank you counsel thank you counsel thank you counsel         thank you counsel thank you counsel thank you thank you counselors I will call counsel I'll be next